**\*NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

_____

|  |  |  |
|---|---|---|
| **IN RE PLAVIX® PRODUCT LIABILITY AND MARKETING LITIGATION** | : : : | **MDL No. 3:13-cv-2418-FLW** |
| **Relates to Cases:** | : : | |
| Ravy Vanny, et al. v. Bristol-Myers Squibb Company, 3:13-cv-03610-FLW-TJB | : : | |
| Michael Arnold, et al. v. Bristol-Myers Squibb Company, et al. 3:13-cv-03612-FLW-TJB | : : : | **OPINION** |
| John Belinda, et al. v. Bristol-Myers Squibb Company, et al. 3:13-cv-03613-FLW-TJB | : : | |
| Irving Arenberg, et al. v. Bristol-Myers Squibb Company, et al. 3:13-cv-03614-FLW-TJB | : : | |
| Sandra Kinney, et al. v. Bristol-Myers Squibb Company, et al. 3:13-cv-03647-FLW-TJB | : : | |
| Bennie Burman, et al. v. Bristol-Myers Squibb Company, et al. 3:13-cv-03648-FLW-TJB | : : | |
| Wauneta Raynor, et al. v. Bristol-Myers Squibb Company, et al. 3:13-cv-03649-FLW-TJB | : : | |
| George Robinson, et al. v. Bristol-Myers Squibb Company, et al. 3:13-cv-03651-FLW-TJB | : : | |
| Iris Meeks, et al. v. Bristol-Myers Squibb Company, et al. 3:13-cv-03652-FLW-TJB | : : | |
| Jack Olmstead, et al. v. Bristol-Myers Squibb Company, et al. 3:13-cv-03654-FLW-TJB | : : | |
| George Dillard, et al. v. Bristol-Myers Squibb Company, et al. 3:13-cv-03655-FLW-TJB | : : | |
| Virgil Walden, Jr., et al. v. Bristol-Myers Squibb Company, et al. 3:13-cv-03656-FLW-TJB | : : | |
| Damon Kaluza, Sr., et al. v. Bristol-Myers Squibb Company, et al. 3:13-cv-03657-FLW-TJB | : : | |
| Vertus Corkerin, et al. v. Bristol-Myers Squibb Company, et al. 3:13-cv-03658-FLW-TJB | : : | |
| James Aiken, et al. v. Bristol-Myers Squibb Company, et al. 3:13-cv-03732-FLW-TJB | : : | |
| Ardean Lowery, et al. v. Bristol-Myers Squibb Company, et al. 3:13-cv-03941-FLW-TJB | : : | |
| Michael Farmer, et al. v. Bristol-Myers Squibb Company, et al. 3:13-cv-03942-FLW-TJB | : : | |
| Elizabeth Abney, et al. v. Bristol-Myers Squibb Company, et al. 4:13-cv-04213-FLW-TJB | : : | |
| Franklin Addison, et al. v. McKesson, A California Corporation, et al. 3:13-cv-4782 | : : | |

Alfonso Aguilar, et al. v. Bristol-Myers Squibb        :
Company, et al. 3:14-cv-02817                          :
Philip Agulay, et al. v. Bristol-Myers Squibb          :
Company, et al. 3:14-cv-01374                          :
Neil Alford, et al. v. Bristol-Myers Squibb            :
Company, et al. 3:14-cv-4636                           :
Gary Baez, et al. v. Bristol-Myers Squibb              :
Company, et al. 3:14-cv-01735                          :
Fred Baird, et al. v. Bristol-Myers Squibb             :
Company, et al. 3:14-cv-00637                          :
Vondell Bankert, et al. v. Bristol-Myers Squibb        :
Company, et al. 3:13-cv-7750                           :
Banks, et al. v. Bristol-Myers Squibb                  :
Company, et al. 3:13-cv-5313                           :
James Blair, et al. v. Bristol-Myers Squibb            :
Company, et al. 3:14-cv-04259                          :
Peggy Boatright, et al. v. Bristol-Myers Squibb        :
Company, et al. 3:13-cv-5309                           :
Brown, et al. v. Bristol-Myers Squibb                  :
Company, et al. 3:14-cv-4257                           :
Patricia Buck, et al. v. Bristol-Myers Squibb          :
Company, et al. 3:14-cv-03496                          :
Edward Bustamante, et al. v. Bristol-Myers Squibb  :
Company, et al. 3:13-cv-07883                          :
Davis, et al. v. Bristol-Myers Squibb                  :
Company, et al. 3:13-cv-04784                          :
Michael Diercks, et al. v. Bristol-Myers Squibb        :
Company, et al. 3:14-cv-01264                          :
Bella Docks, et al. v. Bristol-Myers Squibb            :
Company, et al. 3:13-cv-07237                          :
Larry Douglas, et al. v. Bristol-Myers Squibb          :
Company, et al. 3:13-cv-05912                          :
Lawrence Evans, et al. v. Bristol-Myers Squibb         :
Company, et al. 3:14-cv-4258                           :
Dorothy Gibson, et al. v. Bristol-Myers Squibb         :
Company, et al. 3:13-cv-04785                          :
Green, et al. v. Bristol-Myers Squibb                  :
Company, et al. 3:13-cv-04786                          :
Dale Guinn, et al. v. Bristol-Myers Squibb             :
Company, et al. 3:13-cv-04780                          :
Pamela Harris, et al. v. Bristol-Myers Squibb          :
Company, et al. 3:13-cv-5316                           :
Kenneth Howell, et al. v. Bristol-Myers Squibb         :
Company, et al. 3:13-cv-04783                          :
Howard Jones, et al. v. Bristol-Myers Squibb           :
Company, et al. 3:13-cv-05944                          :

Zelda Justice, et al. v. Bristol-Myers Squibb          :
Company, et al. 3:14-cv-748                            :
Eddie Kessel, et al. v. Bristol-Myers Squibb          :
Company, et al. 3:13-cv-5327                          :
Sher Khan, et al. v. Bristol-Myers Squibb             :
Company, et al. 3:13-cv-05314                         :
Philip Lopresti, et al. v. Bristol-Myers Squibb      :
Company, et al. 3:13-cv-07749                         :
Jose Marrero, et al. v. Bristol-Myers Squibb         :
Company, et al. 3:13-cv-04815                         :
Mary Mathis, et al. v. Bristol-Myers Squibb          :
Company, et al. 3:13-cv-07882                         :
Frances McGuire, et al. v. Bristol-Myers Squibb      :
Company, et al. 3:13-cv-05311                         :
Meyer, et al. v. Bristol-Myers Squibb                :
Company, et al. 3:14-cv-4299                          :
Randall Ritchey, et al. v. Bristol-Myers Squibb      :
Company, et al. 3:13-cv-04894                         :
Leon Roberson , et al. v. Bristol-Myers Squibb       :
Company, et al. 3:13-cv-5276                          :
Dolly Sanders, et al. v. Bristol-Myers Squibb        :
Company, et al. 3:14-cv-4260                          :
Search, et al. v. Bristol-Myers Squibb               :
Company, et al. 3:14-cv-4261                          :
Terry, et al. v. Bristol-Myers Squibb                :
Company, et al. 3:14-cv-4306                          :
David Wilkerson, et al. v. Bristol-Myers Squibb      :
Company, et al. 3:13-cv-5413                          :
Helen Yuan, et al. v. Bristol-Myers Squibb           :
Company, et al. 3:13-cv-7664                          :
Shirley Ester, et al. v. Bristol-Myers Squibb        :
Company, et al. 3:13-5414                             :
Joseph Bozzell, et al. v. Bristol-Myers Squibb       :
Company, et al. 3:14-1262                             :
Jennie Caddell et al. v. Bristol-Myers Squibb        :
Company et al. 3:14-cv-5393                           :
_____               :

**WOLFSON, United States District Judge**:

The above-captioned cases, which have been transferred to this Court as part of a Multi-

District Litigation ("MDL"), arise from alleged wrongful acts, omissions, and fraudulent

representations by Bristol-Myers Squibb Co. ("BMS"); Sanofi-Aventis U.S. LLC., Sanofi-Aventis

U.S. Inc., and Sanofi-Synthelabo, Inc. ("Sanofi") (collectively the "Removal Defendants"); and McKesson Corporation ("McKesson")[1] with respect to the manufacturing and marketing of the drug Plavix by BMS and Sanofi, and the marketing and distribution of Plavix by McKesson. Plaintiffs, as set forth in the above caption, are individuals who ingested Plavix and allegedly suffered injuries as a result, as well as the spouses of these individuals.  Initially, these Plaintiffs brought suit in the California State Superior Court in San Francisco;[2] however, upon removal by BMS and Sanofi to the United States District Court for the Northern District of California, these cases[3] were transferred to this Court by the Multi-District Litigation Panel as part of the In re Plavix MDL, assigned to me. Before this Court is an omnibus motion to remand these cases to state court.  For the reasons that follow, the motion is **GRANTED** in part and **DENIED** in part.

FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Between 2012 and 2014, Plaintiffs filed these instant actions, involving numerous individual plaintiffs from forty-five states, Ontario, and Puerto Rico, in the California State Superior Court located in San Francisco, California.  In each of these Complaints multiple plaintiffs are joined; forty-five out of the sixty member cases subject to this motion have at least one named plaintiff from New York, New Jersey, or Delaware.  There are nine cases that have at

---

[1]     Hereinafter, BMS, Sanofi and Mckesson shall be referred to as "Defendants."

[2]     Currently, the California state court is also handling centralized cases relating to Plavix.

[3]     Originally, eighteen separate cases were transferred to this Court, and Plaintiffs in those cases filed the current omnibus motion for remand.  During the pendency of this motion, additional cases were transferred from the Northern District of California; those cases were also removed by BMS and Sanofi from the same centralized California state Plavix litigation.  The parties have agreed that the present motion applies to those later-transferred cases as well.  In that regard, all of the MDL member cases subject to this motion are set forth in the above caption.

least one named plaintiff from California.[4]  In the remaining six cases, Plaintiffs are completely

diverse from BMS, Sanofi and McKesson (the "Completely Diverse Cases")[5].  As for the

citizenship of Defendants: BMS is headquartered in New York; Sanofi-Aventis U.S. LLC and

Sanofi-Aventis U.S., Inc. are French companies with their American headquarters in New Jersey;

Sanofi-Synthelabo, Inc. is a Delaware corporation with its headquarters in New York; and

McKesson is a Delaware corporation with its headquarters in California.  Because there is at least

one non-diverse plaintiff in each of these cases, except for the Completely Diverse Cases, on the

face of these Complaints, complete diversity is lacking.

    Nevertheless, BMS and Sanofi removed all of these cases to the District Court for the

Northern District of California based on fraudulent misjoinder and fraudulent joinder.[6]  Thereafter,

in June 2013, the Judicial Panel on Multidistrict Litigation transferred these matters to this Court

as part of the In re Plavix MDL.  Subsequently, Plaintiffs filed the instant omnibus motion to

remand to California State Superior Court.

    Because these Complaints are all similar in nature, the Court will recount general facts as

pled in Ravy Vanny, et al. v. Bristol-Myers Squibb Company, et al., No. 13-3610 (FLW), and take

them as true for the purposes of this motion.  The Complaints allege personal injuries arising from

the ingestion of Plavix by Plaintiffs and loss of consortium claims by some spouses.  According to

Plaintiffs, Plavix was heavily marketed directly to consumers through television, magazine and

internet advertising.  Compl. at ¶ 79.  Plaintiffs claim that the drug was represented by Defendants

---

[4]     These nine cases are as follows: Alfred, Buck, Khan, Lopresti, Mathis and McGuire,
Baez, Baird and Bustamante.

[5]     These cases include Farmer, Gibson, Ritchey, Bozzell, Diercks and Ester.

[6]     As for the Completely Diverse Cases, which are removable actions based on diversity
jurisdiction, Plaintiffs argue that the Removal Defendants improperly removed these cases because
of the forum defendant rule and/or fraudulent joinder.  These issues will be discussed, infra.

as providing greater cardiovascular benefits, while being safer and easier on a person's stomach, than a more expensive aspirin regimen.  Id.  In reality, Plaintiffs allege, Plavix is not more effective than aspirin in preventing heart attacks and strokes.  Id. at ¶ 80.  In fact, according to Plaintiffs, the growing body of scientific knowledge has established that the four-dollar Plavix pill is no better than the four-cent-a-day aspirin pill, and, after taking Plavix, the risk of suffering a heart attack, stroke, internal bleeding, blood disorder, or death outweighs any potential benefit.  Id. at ¶¶ 90-94.

Defendants allegedly knew that Plavix was not a better alternative to aspirin, and Defendants allegedly knew or should have known of the injuries associated with taking Plavix, but nonetheless, continued to distribute and market the drug without providing corresponding warnings.  Id. at ¶¶ 80-81.  Plaintiffs further aver that Defendants, through their drug representatives and promotional efforts, also encouraged physicians to prescribe Plavix to a broad population of people who would receive the same therapeutic benefit from aspirin alone, and to use Plavix for unapproved applications.  Id. at ¶ 89.

As a result of these alleged wrongful acts, omissions, and fraudulent representations by Defendants, Plaintiffs assert, inter alia, various product liability and fraud claims against BMS, Sanofi, and McKesson, collectively.  Specifically, Plaintiffs bring state law claims of: (1) design defect; (2) manufacturing defect; (3) negligence; (4) breach of implied warranty; (5) breach of express warranty; (6) deceit by concealment under California law; (7) negligent misrepresentation; (8) fraud by concealment; (9) violations of California Business & Professions Code § 17200; (10) violations of California Business & Professions Code § 17500; (11) violations of the California Consumers Legal Remedies Act; and (12) wrongful death.  Importantly, Plaintiffs do not assert any federal claims.  Therefore, the only basis upon which the Removal Defendants removed these actions is diversity.  On this motion, Plaintiffs argue that removal was improper because complete

diversity is lacking and that the forum defendant rule bars BMS and Sanofi from removing these cases.  The Removal Defendants, however, submit that removal is appropriate because defendant Mckesson was fraudulently joined and that individual plaintiffs' claims are fraudulently misjoined.  The Removal Defendants also argue that in some of the cases, the forum defendant rule does not apply since McKesson was not served prior to removal.

**STANDARD OF REVIEW**

Pursuant to 28 U.S.C. § 1441, "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or defendants to the district court."  In a removal matter, the defendant seeking to remove bears the burden of showing that federal subject matter jurisdiction exists, that removal was timely filed, and that the removal was proper. Boyer v. Snap-on Tools Corp., 913 F.2d 108, 111 (3d Cir.1990), cert. denied, 498 U.S. 1085 (1991).  Once the case has been removed, however, the court may nonetheless remand it to state court if the removal was procedurally defective or subject matter jurisdiction is lacking.  28 U.S.C. § 1447(c).

Subject matter jurisdiction may be based upon federal question or diversity grounds. 28 U.S.C. § 1331 (federal question); 28 U.S.C. § 1332 (diversity).  In diversity cases, each party must be of diverse citizenship from each other and the amount in controversy must exceed $75,000. 28 U.S.C. § 1332(a); Grand Union Superm. of the Virgin Isl., Inc., v. H.E. Lockhart Mgmt., Inc., 316 F.3d 408, 410 (3d Cir. 2003).

Where subject matter jurisdiction is based on diversity citizenship, Section 1441(b) imposes an additional condition on removal known as the "forum defendant rule."  Under Section 1441(b), an action can be removed on the basis of diversity jurisdiction "only if none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action

7

is brought."  Therefore, the forum defendant rule prohibits removal based on diversity where a defendant is a citizen of the forum state—the state in which the plaintiff originally filed the case. See, e.g., Blackburn v. United Parcel Service, Inc., 179 F.3d 81 (3d Cir.1999).

## DISCUSSION

## I.      Removal Prior to Service

As a threshold question**,** Plaintiffs, invoking the forum defendant rule, argue that removal was improper because defendant McKesson is a citizen of the forum state, i.e., California.  In response, the Removal Defendants posit that, aside from whether McKesson is fraudulently joined,[7] the forum defendant rule does not preclude removal of three separate cases, i.e., Bozzell, Diercks and Ester,[8] because McKesson was not "properly joined and served" at the time of removal.  In support of their argument, the Removal Defendants specifically point to the language in Section 1441(b) which states that cases in which subject matter jurisdiction is premised on diversity citizenship "may not be removed if any of the parties in interest properly joined *and served* as defendants is a citizen of the State in which the action is brought."  28 U.S.C. § 1441(b)(2) (emphasis added).  The Removal Defendants argue that by the plain language of the statute, the forum defendant rule does not apply until the forum defendant, i.e., McKesson, has been properly served.  The Removal Defendants reason that because McKesson had not been served at the time BMS and Sanofi removed these cases to the Northern District of California, removal is proper under § 1441(b).

---

[7]      The Court will discuss fraudulent joinder, infra.

[8]      Bozzell, Diercks and Ester are a part of the Completely Diverse Cases.  The three other Completely Diverse Cases, i.e., Farmer, Gibson and Ritchey, are subject to the forum defendant rule because McKesson was served prior to their removal and because the Court finds, infra, that McKesson was properly joined.

On the other hand, Plaintiffs argue that a literal interpretation of the "joined and served" language would create a bizarre result that Congress could not have intended.  Specifically, they argue that § 1441(b) was enacted to prevent gamesmanship by plaintiffs filing against resident defendants whom they do not intend to serve, simply to block removal.  However, Plaintiffs suggest that a literal interpretation of the language would allow for another type of gamesmanship, i.e., hasty filing of removals.  They point to anecdotes of defendants using internet-based tracking systems to discover the existence of lawsuits filed against them, and racing to the courthouse to remove the matter and defeat plaintiff's choice of forum where the forum defendant rule would specifically bar removal after service of the complaint.

On this specific issue, there are decisions from courts within this district on both sides of the dispute since the Third Circuit has not addressed it.  Some courts have allowed removal prior to service upon a forum defendant based on the plain language of the statute.  See, e.g., Poznanovich v. AstraZeneca Pharm. LP, No. 11-4001, 2011 WL 6180026, at *4 (D.N.J. Dec. 12, 2011) ("The Court finds that the language of the statute is plain, and, thus, adherence to the plain language is required."); Bivins v. Novartis Pharm. Corp., No. 90-1087, 2009 WL 2496518, at *2 (D.N.J. Aug. 10, 2009) ("Here, the statutory language is clear: 'removal is prohibited only where a defendant, who is a resident of the forum state, has been 'properly joined and served.'"') (internal citations omitted); Thomson v. Novartis Pharm. Corp., No. 06-6280, 2007 WL 1521138, at *4 (D.N.J. May 22, 2007) ("Plaintiffs have not convinced the Court that permitting removal prior to the time of service would be 'demonstrably at odds' with Congressional intent or create such a 'bizarre' outcome 'that Congress could not have intended it.'") (internal citations omitted); Yocham v. Novartis Pharm. Corp., No. 07-1810, 2007 WL 2318493, at *3 (D.N.J. Aug. 13, 2007) ("[U]nder the plain reading of § 1441(b), removal was not prohibited because NPC (a resident of

the forum state) had not been served when it removed this case to this Court."); <u>Ripley v. Eon Labs Inc.</u>, 622 F. Supp. 2d 137, 142 (D.N.J. 2007) ("The plain language of 28 U.S.C. § 1441(b), despite the numerous policy arguments against it, permits removal of this case from the Superior Court of New Jersey to this Court."); <u>Jaeger v. Schering Corp.</u>, No. 07-3465, 2007 WL 3170125, at *3 (D.N.J. Oct. 25, 2007) ("This limitation, however, only applies to a case in which an in-state defendant has been 'properly joined and served.'").

Other courts in this district have found that a literal interpretation of the "properly joined and served" language of § 1441(b) would be inconsistent with congressional intent.  <u>See</u>, <u>e.g.</u>, <u>Williams v. Daiichi Sankyo, Inc.</u>, No. 14-863, 2014 WL 1391240, at *5 (D.N.J. Apr. 9, 2014) ("[P]ermitting these non-forum Defendants to remove before the Plaintiffs are actually capable of serving the forum Defendants violates the intention of the forum defendant rule by permitting gamesmanship."); <u>Hokanson v. Kerr Corp.</u>, No. 13-4534, 2014 WL 936804, at *2 (D.N.J. Mar. 10, 2014) ("This Court intends to abide by the line of cases holding that a non-forum defendant cannot remove a case where there are unserved forum defendants…") (internal quotations omitted); <u>Walborn v. Szu</u>, No. 08-6178, 2009 WL 983854, at *5 (D.N.J. Apr. 7, 2009) ("In the absence of any evidence that Mr. Szu's joinder was improper, the court rules that this proceeding does not fall under the category of cases that Congress meant to address by adding the 'properly joined and served' language to § 1441(b), and National's removal therefore violated the forum defendant rule."); <u>Sullivan v. Novartis Pharm. Corp.</u>, 575 F. Supp. 2d 640, 643 (D.N.J. 2008) ("[T]he Court will look beyond the language of the statute in order to avoid an absurd and bizarre result, and in order to give effect to the purpose of the forum defendant rule and the 'properly joined and served' language."); <u>Brown v. Organon Int'l Inc.</u>, No. 07-3092, 2008 WL 2833294, at *5 (D.N.J. July 21, 2008) ("This Court must give effect to the purpose of the statute rather than its

10

literal words of the statute.  Section 1441(b) bars removal here even if Organon has not been 'properly joined and served.'"); DeAngelo-Shuayto v. Organon USA Inc., No. 07-2923, 2007 WL 4365311, at *5 (D.N.J. Dec. 12, 2007) ("[T]he Court finds that a forum defendant cannot remove to federal court even if the forum defendant has not been 'properly joined and served.'"); Fields v. Organon USA Inc., No. 07-2922, 2007 WL 4365312, at *5 (D.N.J. Dec. 12, 2007) ("[T]he Court finds that a forum defendant cannot remove to federal court even if the forum defendant has not been 'properly joined and served.'").

Clearly, there is considerable debate within this district alone on the issue of removal prior to service upon a forum defendant.  Indeed, courts around the country have also differed on this question.  However, it appears a majority of the courts have concluded that a non-forum defendant may remove **before** a properly joined forum defendant has been served.  See North v. Precision Airmotive Corp., 600 F. Supp. 2d 1263, 1268 (M.D. Fla. 2009)(having thoroughly examined numerous cases around the country, the North court concluded that the majority of courts have determined "that a non-forum defendant may remove despite the fact that the plaintiff has joined, but not yet served, a forum defendant.").  See, e.g., McCall v. Scott, 239 F.3d 808, 813 n.2 (6th Cir. 2001); Vitatoe v. Mylan Pharms., Inc., Case No. 08-CV-85, 2008 U.S. Dist. LEXIS 63458 (N.D. W.Va. Aug. 13, 2008); Valerio v. Smithkline Beecham Corp., Case No. 08-60522-CIV, 2008 U.S. Dist. LEXIS 60242 (S.D. Fla. Aug. 7, 2008); Johnson v. Precision Airmotive, LLC, Case No. 07-CV-1695, 2007 U.S. Dist. LEXIS 89264 (E.D. Mo. Dec. 4, 2007); Waldon v. Novartis Pharms. Corp., Case No. 07-01988, 2007 U.S. Dist. LEXIS 45809 (N.D. Cal. Jun. 18, 2007); Clawson v. FedEx Ground Package Sys., Inc., 451 F. Supp. 2d 731 (D. Md. 2006); Ott v. Consol. Freightways Corp. of Del., 213 F. Supp. 2d 662 (S.D. Miss. 2002); Mask v. Chrysler Corp., 825 F. Supp. 285 (N.D. Ala. 1993); Wensil v. E.I. DuPont De Nemours and Co., 792 F. Supp. 447

(D.S.C. 1992);  Republic Western Ins. Co. v. Int'l Ins. Co., 765 F. Supp. 628 (N.D. Cal. 1991);

Windac Corp. v. Clarke, 530 F. Supp. 812 (D. Neb. 1982); see also 14B Wright, Miller & Cooper,

Federal Practice and Procedure § 3723 at 624 (3d ed. 1998).

 This Court, too, joins the majority in finding that, so long as a properly joined forum

defendant has not been served, the Removal Defendant's removal of these cases is proper under §

1441(b).  First and foremost, the courts that have reached the opposite conclusion, as I have

explained above, rely on putative congressional and legislative intent, rather than the plain and

unambiguous language of § 1441(b).[9]  However, such a finding is contrary to the Supreme Court's

guidance.  As the Supreme Court has cautioned, "the authoritative statement is the statutory text,

not the legislative history or any other extrinsic material."  Exxon Mobil Corp. v. Allapattah Servs.,

Inc., 545 U.S. 546, 568 (2005).  In that regard, the Court observed that judicial investigation of the

intent and history of a particular statute has a tendency "to become . . . an exercise in looking over

a crowd and picking out your friends."  Id. (internal quotations and citations omitted).  In other

words, courts should be leery of going beyond the text of a statute, particularly when such text is

clear and unambiguous.  Id.  Thus, although Congress may not have anticipated the possibility that

defendants could actively monitor state court dockets to quickly remove a case prior to being

served, as Plaintiffs here suggest, nevertheless, "such a result is not so absurd as to warrant reliance

on 'murky' or non-existent legislative [intent] in the face of an otherwise perfectly clear and

unambiguous statute."  North, 600 F.Supp. 2d at 1269-70.  Of course, if Congress intends a

different result, 'it is up to Congress rather than the courts to fix it." Allapattah Servs., 545 U.S. at

565.

 Second, from a policy standpoint, the "properly joined and served" language of § 1441(b)

---

[9]  Importantly, there is no recorded legislative history when § 1441(b) was amended.

has been interpreted by courts as an effort to prevent gamesmanship by plaintiffs. See Sullivan v. Novartis Pharms. Corp., 575 F. Supp. 2d 640, 645 (D.N.J. 2008) (collecting cases).   In a recent opinion, the Seventh Circuit explained that, in its view, the "properly joined and served" language creates "a service-based exception to the forum defendant rule, meaning that a properly served out-of-state defendant will not be prevented from removing a case when the plaintiff has named but not yet served a resident defendant." Morris v. Nuzzo, 718 F.3d 660, 670 n. 3 (7th Cir. 2013). The appellate court explained that this requirement makes sense because it "provides at least a modicum of protection against the insertion of a 'straw-man' resident defendant whose presence blocks removal but against whom the plaintiff does not intend to proceed." Id.; see, e.g., Stan Winston Creatures, Inc. v. Toys "R" Us, Inc., 314 F.Supp.2d 177, 181 (S.D.N.Y. 2003) ("The purpose of the 'joined and served' requirement is to prevent a plaintiff from blocking removal by joining as a defendant a resident party against whom it does not intend to proceed, and who it does not even serve"); Holmstrom v. Harad, No. 05 C 2714, 2005 U.S. Dist. LEXIS 16694, at *2 (N.D. Ill. 2005) ("The 'joined and served' requirement makes sense . . . a plaintiff should not be able to prevent a served defendant from removing simply by naming, but not serving, a forum citizen as a defendant").

Hence, from a policy perspective, § 1441(b) protects non-forum defendants from plaintiffs' procedural maneuvering to deprive these defendants of their statutory right to litigate in a federal forum.  More specifically, this prevents out-of-state defendants from possible prejudices in state court.  See Lively v. Wild Oats Markets, Inc., 456 F.3d 933, 940 (9th Cir. 2006) (citing Tosco Corp. v. Cmtys. for a Better Env't., 236 F.3d 495, 502 (9th Cir. 2001).  This protection, in my view, is particularly important because the forum defendant rule creates an opportunity for procedural gamesmanship on the part of plaintiffs attempting to keep an action in state court, and thus

blocking removal, by either improperly joining a forum defendant, or not serving the forum defendant that they have no intention of pursing.

Upon a careful and thorough review of the foregoing precedents and the Supreme Court's guidance, the Court holds that a non-forum defendant may remove a state court action to federal court under Section 1441(b) notwithstanding the fact that the plaintiff has already joined - but not yet served - a forum defendant.  Accordingly, the Court finds that the Removal Defendants' removal of <u>Bozzell</u>, <u>Diercks</u> and <u>Ester</u> was not improper under the forum defendant rule since the forum defendant McKesson was not served prior to removal.  Having made that determination, Plaintiffs' request for remand as to those three cases is denied.

## II.     Fraudulent Joinder

The Removal Defendants contend that Plaintiffs fraudulently joined McKesson as a defendant for the sole purpose of defeating diversity and that there is no reasonable basis for doing so.  Indeed, the fraudulent joinder doctrine permits courts to ignore the citizenship of a non-diverse defendant for diversity purposes if the plaintiff's joinder of that defendant is "fraudulent." <u>Hogan v. Raymond Corp.</u>, 536 Fed. Appx. 207, 210 (3d Cir. 2013) (citing <u>In re Briscoe</u>, 448 F.3d 201, 216 (3d Cir. 2006)).  "'Joinder is fraudulent where there is no reasonable basis in fact or colorable ground supporting the claim against the joined defendant[.]'" <u>In re Briscoe</u>, 448 F.3d at 217 (citation omitted).  Importantly, the plaintiff's mere failure to state a claim does not satisfy this standard; rather, plaintiff's claim must instead be so "wholly insubstantial and frivolous as to fail to invoke the subject matter jurisdiction of the District Court." <u>Hogan</u>, 536 Fed. Appx. at 210 (quotations and citations omitted).

The Third Circuit has advised that when the district court makes such a determination, it must bear in mind that "if there is even a possibility that a state court would find that the complaint

states a cause of action against any one of the resident defendants, the federal court must find that joinder was proper and remand the case to state court." In re Briscoe, 448 F.3d at 217. And, significantly, the district court must only focus on the plaintiff's complaint at the time the petition for removal was filed and assume as true all factual allegations of the complaint. Id. see Brown v. JEVIC, 575 F.3d 322, 326 (3d Cir. 2009). The court also "must resolve any uncertainties as to the current state of controlling substantive law in favor of the plaintiff." Id.

The Third Circuit has repeatedly cautioned that the reviewing court must not "conduct a merits determination in the context of a fraudulent joinder inquiry." In re Briscoe, 448 F.3d at 217-18. In that regard, the circuit court explained:

> [B]ecause "it is possible that a party is not fraudulently joined, but that the claim against that party ultimately is dismissed for failure to state a claim upon which relief may be granted," the district court had "erred in converting its jurisdictional inquiry into a motion to dismiss. Unless the claims against the non-diverse defendant could be deemed "wholly insubstantial and frivolous," which they were not, the joinder could not be considered fraudulent.

Id. at 218 (quoting Batoff v. State Farm Ins. Co., 977 F.2d 848, 852 (3d Cir. 1992). Moreover, it is not prudent for the district court to reach the merits of any defenses in deciding a fraudulent joinder question, because doing so would transform the threshold jurisdictional issue into a decision on the merits. Boyer v. Snap-On Tools Corp., 913 F.2d 108, 112 (3d Cir. 1990).

Here, the Removal Defendants advance two bases why McKesson should be deemed as fraudulently joined. First, they argue at length that Plaintiffs' causes of actions against McKesson are preempted under the Supreme Court's decision in PLIVA, Inc. v. Mensing, 131 S. Ct. 2567 (2011). In Mensing, the Supreme Court held that the Federal Food, Drug and Cosmetic Act ("FDCA") preempts state failure to warn claims against generic drug manufacturers because such manufacturers are prevented from independently changing their generic drugs' safety labels. Id. at 2573. Likewise, the Removal Defendants claim, because McKesson, a distributor, lacks

15

authority to alter a prescription drug's warnings, <u>Mensing</u>'s preemption reasoning should apply here.

The issue of preemption in this context, i.e., whether the FDCA's preemption of state failure to warn claims or design defect claims against generic drug manufacturers can be extended to distributors of brand name drugs, has garnered a spirited debate amongst courts, and it has not been definitively addressed by the Supreme Court.  But, under a fraudulent joinder analysis, I cannot make any determination with respect to the merits of the Removal Defendant's affirmative defense of preemption.  <u>In re Briscoe</u>, 448 F.3d at 218.

To begin, I start with the general principle that many district courts in this circuit have observed: "preemption is better viewed as an affirmative defense, [and] that removal to federal court is not appropriate" on that basis.  <u>DeJoseph v. Cont'l Airlines, Inc.</u>, No. 13-7714, 2014 U.S. Dist. LEXIS 65037, at *13 (D.N.J. May 12, 2014); <u>Costantino v. Cont'l Airlines, Inc.</u>, No. 13-1770, 2013 U.S. Dist. LEXIS 187965, at *8-9 (D.N.J. Sep. 11, 2013); <u>Tenet Health Sys. Phila., Inc. v. Diversified Admin. Corp.</u>, No. 07-4848, 2012 U.S. Dist. LEXIS 61395, at *9 (E.D. Pa. May 2, 2012); <u>Goodwin v. Am. Airlines, Inc.</u>, No. 06-12, 2008 U.S. Dist. LEXIS 118922, at *7 n.4 (D.V.I. Apr. 22, 2008).  Indeed, the Supreme Court has made it very clear that cases "may not be removed to federal court on the basis of a federal defense, including the defense of preemption, even if the defense is anticipated in the plaintiff's complaint, and even if both parties admit that the defense is the only question truly at issue in the case."[10]  <u>Franchise Tax Bd. of Cal.</u>, 463 U.S. 1, 14

---

[10]    There does exist an independent corollary to this rule, known as the "complete preemption" doctrine. <u>See</u> <u>Pryzbowski v. U.S. Healthcare</u>, 245 F.3d 266, 271 (3d. Cir. 2001). Unlike ordinary preemption, complete preemption operates to confer original federal subject matter jurisdiction notwithstanding the absence of a federal cause of action on the face of the complaint. <u>See</u> <u>Metropolitan Life Ins. Co. v. Taylor</u>, 481 U.S. 58, 63-64 (1987) (recognizing Congress' authority to completely pre-empt certain causes of action under state law so that any civil complaint raising this select group of claims is necessarily federal in character).  Complete preemption is a narrowly

(1983).

Here, I recognize that the Removal Defendants did not remove these actions based on preemption grounds.  However, the issue of whether McKesson is fraudulent joined, partly, turns on whether Plaintiffs' state claims are preempted by the FDCA.  To that end, the fraudulent joinder analysis necessarily involves making a merit determination on the Removal Defendants' preemption defense.  And, this type of determination is not permitted in this context.[11]  See Hughes v. Mylan, Inc., No. 11-5543, 2011 U.S. Dist. LEXIS 123544, at *25-27 (E.D. Pa. Oct. 25, 2011) (rejecting Mensing as basis for fraudulent-joinder argument); Freitas v. McKesson Corp., 889 F. Supp. 2d 931, 938 (E. D. Ky. 2012)(same); In re: Diet Drugs, 905 F. Supp. 2d 644, 647-48 (E.D. Pa. 2012);  Hunter v. Philip Morris USA, 582 F.3d 1039, 1045 (9th Cir. 2009) (preemption defense "requires an inquiry into the merits of the plaintiff's claims against all defendants and an analysis of federal law," and a defendant who argues preemption does not "overcome the strong presumption against removal jurisdiction" (internal quotation marks omitted)).  California courts are capable of deciding whether the plaintiffs' claims against McKesson are preempted. Hughes, 2011 U.S. Dist. LEXIS 123544, at *25 ("Whether or not some or all of [the plaintiffs'] claims are preempted based on the Supreme Court's decision in Mensing is a legal issue based on preemption that can be addressed by a state court.").  Therefore, the question of preemption is reserved for the

---

drawn jurisdictional rule for assessing federal removal jurisdiction which looks beyond the complaint to determine if the suit is, in reality, "purely a creature of federal law," creating the federal question jurisdiction requisite to removal to federal courts.  Id.  Here, however, there is no argument by the Removal Defendants that the FDCA completely preempts the state law claims asserted by Plaintiffs in their Complaint.  Rather, the Removal Defendants argue ordinary, or conflict, preemption, which does not give rise to a valid basis for removal.  See Caterpillar, Inc. v. Williams, 482 U.S. 386, 392 (1987).

[11]     Tellingly, the Removal Defendants do not respond to Plaintiffs' argument that the affirmative defense of preemption should not be decided here.

state court.

Additionally, I note that there is no dispute here that California law does not preclude Plaintiffs from asserting state failure-to-warn related claims against drug distributors, like McKesson in this case.  Rather, as a matter of pleading, the Removal Defendants further argue that McKesson is fraudulently joined because Plaintiffs make no allegation that McKesson distributed the Plavix pills that any of the Plaintiffs here actually ingested.  On this very issue, Plaintiffs cite to Caouette v. Bristol-Myers Squibb Co., No. 12-1816, 2012 U.S. Dist. LEXIS 113980 (N.D. Cal. Aug. 10, 2012) and Smith v. Amylin Pharmaceuticals, LLC, No. 13-1236, 2013 U.S. Dist. LEXIS 96612 (S.D. Cal. Jul. 10, 2013).  In Caouette and Smith, the defendant drug companies argued that McKesson was fraudulent joined in those cases because, other than a few overly broad statements that McKesson is a large pharmaceutical distributor that distributes to more than 40,000 customers, the plaintiffs made no specific, independent allegations connecting the plaintiffs to McKesson.  Both courts rejected such arguments.  The Caouette court, which dealt with the same allegations as those asserted in the instant cases, explained that the plaintiffs need not allege with such specificity that each plaintiff ingested Plavix distributed by McKesson; instead, the court found that it is sufficient that the plaintiffs have alleged that their damages arose from their use of Plavix distributed by McKesson.  Caouette, 2012 U.S. Dist. LEXIS 113980, at *28.  Similarly, the Smith court found that California law does not require such precise pleading requirements.  Smith, 2013 U.S. Dist. LEXIS 96612, at *14.  Moreover, even if such pleading were deficient, the court was not convinced that the plaintiffs could not cure it by amending the complaint.

In this case, this Court is satisfied that Plaintiffs' allegations regarding McKesson's role are sufficient under California law for the purposes of demonstrating that there are colorable claims against McKesson.  To begin, Plaintiffs allege that McKesson and the other defendants knowingly

or negligently marketed, distributed, and sold Plavix without adequate warnings.  Compl., ¶ 75.

They further allege that McKesson distributed Plavix that caused their injuries.  Id. at ¶ 1.  In that

regard, Plaintiffs aver that McKesson distributed and sold Plavix nationwide where Plaintiffs

resided and ingested Plavix.  Id. at ¶¶ 1, 5, 6, 8.  I find that these allegations sufficient at this

juncture.

      In a recently decided case, D.A. v. McKesson Corp., No. 13-1700, 2014 U.S. Dist. LEXIS

6503, at *12-14 (E.D. Ca. Jan. 17, 2014), the court determined that allegations against McKesson

that it distributed the drug Paxil are sufficient for the purpose of finding that McKesson was not

fraudulently joined.  The court explained:

> Plaintiffs allege GSK and McKesson were involved with "designing, researching,
> developing, testing, inspecting, producing, manufacturing, analyzing,
> merchandising, advertising, promoting, labeling, distributing, marketing, and
> selling PAXIL.®" (Doc. 1-1 at 10, ¶40.) In addition, Plaintiffs contend the
> defendants, including McKesson, "knew or should have known that PAXIL® could
> be dangerous and unsafe for pregnant women and the developing fetus," yet the
> defendants "failed to adequately warn of said risks." (Id. at 11, ¶ 43; 14, ¶ 48.)
> According to Plaintiffs, "as a direct and proximate result" of the defendants' actions,
> the plaintiffs "incurred past and future general and special damages." (See id. at 12,
> ¶ 46). Whether McKesson distributed the drug which caused the alleged injuries is
> not information within the Plaintiffs' knowledge. Instead, they must obtain this
> information from McKesson, the pharmacy or other third party. Thus, the allegation
> that McKesson distributed the drug at issue, based upon information and belief, is
> sufficient. As a result, the Court finds Plaintiffs have sufficiently alleged a causal
> link between McKesson and the injuries suffered.

Id. at *15-16; see J.F. v. McKesson Corp., No. 13-1699, 2014 U.S. Dist. LEXIS 6455, at *16-17

(E.D. Pa. Jan. 17, 2014)(same).

      Based on how other California courts have dealt with similar issues, I reject the Removal

Defendants' argument that Plaintiff's pleadings must be more specific because my inquiry here is

not whether Plaintiffs' claims survive a dismissal motion, but rather, whether their claims against

McKesson have no reasonable basis in fact or colorable ground. In re Briscoe, 448 F.3d at 217

("[u]nless the claims against . . . defendant could be deemed 'wholly insubstantial and frivolous,' which they were not, the joinder could not be considered fraudulent."). Under such broad standard, I cannot find that Plaintiffs' allegations are so deficient that they failed to raise any colorable ground for supporting their claims against McKesson. While the Removal Defendants argue that there are many other distributors of Plavix, the fact that Plavix has distributors other than McKesson (approximately twenty) is not controlling. See Caouette, 2012 U.S. Dist. LEXIS 113980 at *28. Indeed, McKesson is one of many — not the exclusive — distributors of Plavix to pharmacies, healthcare facilities, and hospitals. In that regard, Plaintiffs have adequately apprised McKesson of the factual basis for their claims: they allege injuries arising from ingestion of Plavix, and that McKesson distributed those products. See Freitas, 889 F. Supp. 2d. at 942. Plaintiffs are not required to sue all distributors. In any event, the Court is not conducting a Rule 12(b)(6) analysis; the Removal Defendants are free to make any dismissal related arguments in state court, which may ultimately be successful, and would potentially allow removal at that time. However, I find on this remand motion that the Removal Defendants have failed to show that Plaintiffs cannot assert a colorable claim against McKesson. Because I find that McKesson is not fraudulently joined, Alfred, Buck, Khan, Lopresti, Mathis, McGuire, Baez, Baird, Bustamante, Farmer, Gibson and Ritchey are remanded.

## II.    Fraudulent Misjoinder

The remainder of the forty-five cases includes at least one non-diverse plaintiff residing in New York, New Jersey, or Delaware. Because BMS is a citizen of New York, and the Sanofi defendants are citizens of New Jersey and Delaware, complete diversity is lacking in those cases. Pursuant to the fraudulent misjoinder doctrine, the Removal Defendants argue, however, that these non-diverse plaintiffs have no apparent connection to other named plaintiffs except for their

20

ingestion of Plavix.  In particular, the Removal Defendants argue that these plaintiffs do not allege that they received Plavix from the same prescribing physician, suffered the same type of injuries, used Plavix alone or in combination with aspirin, ingested Plavix for the same reasons, used Plavix for similar lengths of time, or took similar dosages of Plavix.  As a result, based on these varying factual matters, the Removal Defendants assert that each plaintiff's claims involve divergent questions of law and fact, and the non-diverse plaintiffs fail to meet the minimum standards for joinder. The Removal Defendants, thus, maintain that the Court must sever and dismiss the claims by these non-diverse plaintiffs under the doctrine of fraudulent misjoinder.  In response to these arguments, Plaintiffs stress that the fraudulent misjoinder theory has been rejected everywhere except in the Fifth and Eleventh Circuits, neither of which binds this Court.  Alternatively, they argue, even if the Court were to adopt the fraudulent misjoinder theory, joinder of these non-diverse plaintiffs is not a sham because there is no indication that they did not suffer Plavix-related injuries.

Having reviewed the Complaints before me, at the outset, I express my concerns with the manner in which seemingly unrelated plaintiffs and non-diverse plaintiffs have joined their claims in single multiple-plaintiff actions.  That said, however, the issue which I must first decide is whether fraudulent misjoinder is a viable doctrine for a federal court, exercising diversity jurisdiction, to apply. On that question, this Court has reviewed substantial case law on both sides of the aisle and come to a determination that the issue of misjoinder should be resolved by the state court as a matter of removal jurisprudence.

Fraudulent misjoinder, otherwise known as "procedural misjoinder", occurs when a plaintiff attempts to defeat removal by misjoining the unrelated claims of non-diverse party plaintiffs against a defendant.  Geffen v. Gen. Elec. Co., 575 F. Supp. 2d 865, 869 (N.D. Ohio

2008).  While fraudulent joinder tests the viability of the claims against the defendant, fraudulent misjoinder tests the procedural basis of a party's joinder.  See Asher v. Minn. Mining & Mfg. Co., No. 04-522, 2005 WL 1593941, at *4 (E.D. Ky. June 30, 2005) (stating that fraudulent joinder addresses whether plaintiffs' "joined claims are unrelated and have been improperly joined to destroy diversity."); see also Geffen, 575 F. Supp. 2d 865, 869 (N.D. Ohio 2008) ("[W]ith fraudulent misjoinder, the charge is that the joined claims are unrelated and have been improperly joined in one action to destroy diversity.").

The fraudulent misjoinder doctrine was first articulated by the Eleventh Circuit in Tapscott v. MS Dealer Serv. Corp., 77 F.3d 1353 (11th Cir. 1996).  In Tapscott, the Eleventh Circuit acknowledged that improper joinder can operate to defeat a defendant's right to remove, but noted that the misjoinder must be "egregious" in order to rise to the level of being fraudulent.  Id. at 1360.  Part of what made the misjoinder in Tapscott "egregious" was that there was "no real connection" between the underlying facts of the claims.  Triggs v. John Crump Toyota, Inc., 154 F.3d 1284, 1289 (11th Cir. 1998).  Other circuits have since acknowledged the fraudulent misjoinder doctrine, but few have explicitly adopted it.  See Lafalier v. State Farm Fire & Cas. Co., 391 Fed. Appx. 732, 739-40 (10th Cir. 2010); Anderson v. Bayer Corp., 610 F.3d 390, 394 (7th Cir.2010); In re Prempro Prods. Liability Litig., 591 F.3d 613, 622 (8th Cir. 2010); Ca. Dump Truck Owners Ass'n v. Cummins Engine Co., Inc., 24 Fed. Appx. 727, 729 (9th Cir. 2001).  Even amongst the courts that have adopted the fraudulent misjoinder doctrine, no clear standard for its application has emerged.  Rutherford v. Merck & Co., Inc., 428 F. Supp. 2d 842, 850-55 (S.D. Ill. 2006) (collecting cases).

I note that the Third Circuit has not addressed the issue of fraudulent misjoinder.  In re Avandia Mktg., Sales Practices & Products Liab. Litig., 624 F. Supp. 2d 396, 412 n.46 (E.D. Pa.

2009).  At least one court in this district, cited by the Removal Defendants here, has however applied the fraudulent misjoinder doctrine.  See In re Fosamax (Alendronate Sodium) Products Liab. Litig. (No. II), No. 11-3045, 2012 WL 1118780 (D.N.J. Apr. 3, 2012) aff'd, 751 F.3d 150 (3d Cir. 2014).[12]  In Fosamax, the Court acknowledged that fraudulent misjoinder has not been universally adopted and that the Third Circuit has not addressed the issue.  Id. at *6.  Nevertheless, the Fosamax court applied the doctrine in a pharmaceutical action.[13]  Id. at *3.  Despite Fosamax, however, as a general matter and without regard to the nature of the case, it appears that an overwhelming number of courts in this district have declined to apply the fraudulent misjoinder doctrine.  See, e.g., Kaufman v. Allstate Ins. Co., No. 07-6160, 2010 WL 2674130, at *8 (D.N.J. June 30, 2010) ("The Court, without guidance from the Third Circuit, and noting other district courts' reluctance to embrace the Tapscott doctrine finds that this issue would be better decided in state court, the court in which the parties were originally joined."); Belmont Condo. Ass'n, Inc. v.

---

[12]      The issue of fraudulent misjoinder was not on appeal before the Third Circuit.  Therefore, the issue remains unresolved by the Third Circuit.

[13]      Although Fosamax applied fraudulent misjoinder specifically in the pharmaceutical context, various other courts have rejected fraudulent misjoinder in similar circumstances.  See, e.g., In re Prempro Prods. Liab. Litig., 591 F.3d at 624 n.8 ("Considering the uncertainty surrounding the propriety of the joinder of plaintiffs' claims, the preferable course of action may have been for defendants to challenge the misjoinder in state court before it sought removal."); Geffen v. Gen. Elec. Co., 575 F. Supp. 2d 865, 869 (N.D. Ohio 2008) (rejecting use of fraudulent misjoinder doctrine to sever medical malpractice claims against medical defendants from products liability claims against pharmaceutical defendants); Livingston v. Hoffmann-La Roche, Inc., No. 09-2611, 2009 WL 2448804 (N.D. Ill. Aug. 6, 2009) (declining to adopt fraudulent misjoinder to sever claims against forum defendants from claims against pharmaceutical defendants); Reeves v. Pfizer, Inc., 880 F. Supp. 2d 926, 927-28 (S.D. Ill. 2012) (finding fraudulent misjoinder to be an improper expansion of federal diversity jurisdiction in an action against manufacturers of the prescription drug Zoloft); Baker v. Johnsons and Johnson, 709 F. Supp. 677, 686-87 (S.D. Ill. 2010) (declining to recognize fraudulent misjoinder doctrine in personal injury action against manufacturers and distributors of the drug Levaquin).  Indeed, as discussed below, it is more prudent for state courts to determine questions of joinder pursuant to state law procedural rules, regardless of the nature of the case.

Arrowpoint Capital Corp., No. 11-02900, 2011 WL 6721775, at *7 (D.N.J. Dec. 20, 2011) ("This Court declines to include procedural misjoinder as an alternative ground for fraudulent joinder."); see also In re Paulsboro Derailment Cases, No. 13-5583, 2014 WL 197818, at *3-7 (D.N.J. Jan. 13, 2014) (declining to apply fraudulent misjoinder because it is unclear whether it is a viable theory in the district, it has never been applied outside of the pharmaceutical context, defendants failed to point to any egregious conduct on the part of plaintiffs, and because the plain requirements of Rule 20 for permissive joinder were satisfied); Prudential Ins. Co. of Am. v. Barclays Bank PLC, No. 12-5854, 2013 WL 221995, at *10 n.13 (D.N.J. Jan. 22, 2013) ("The Third Circuit has never approved extending the doctrine to attack the joinder of Plaintiffs, and some courts refuse to do so.") report and recommendation adopted, No. 12-05854, 2013 WL 1890279 (D.N.J. May 6, 2013); Reuter v. Medtronics, Inc., No. 10-3019, 2010 WL 4628439, at *5-6 (D.N.J. Nov. 5, 2010) ("Even assuming fraudulent misjoinder in its most expansive form was accepted in this Circuit (which it clearly is not), it would not apply here.") report and recommendation adopted, No. 10-3019, 2010 WL 4902662 (D.N.J. Nov. 23, 2010).

Indeed, these New Jersey district courts decisions find substantial support in other decisions across the country.  A review of federal cases reveals that the consensus amongst other courts is against the adoption of such a doctrine.  See Geffen v. Gen. Elec. Co., 575 F. Supp. 2d 865, 872 (N.D. Ohio 2008) ("In sum, the Court declines to follow the Tapscott holding and apply the doctrine of fraudulent misjoinder."); Halliburton v. Johnson & Johnson, 983 F. Supp. 2d 1355, 1359 (W.D. Okla. 2013) ("Given this criticism and the lack of guidance by the Tenth Circuit, the court declines to adopt the procedural misjoinder doctrine and to extend it to the plaintiffs' claims at issue in these actions."); Myers Indus., Inc. v. Young, No. 13- 01278, 2013 WL 4431250, at *3 (N.D. Ohio Aug. 16, 2013) ("Because the Court cannot conclude with complete certainty that the

24

Sixth Circuit would hold fraudulent joinder analysis applies to plaintiffs, and '[a]ll doubts as to the propriety of removal' must be resolved 'in favor of remand,' the Court is bound to refuse to apply fraudulent joinder analysis…"); <u>Fore Investments, LLC v. Travelers Indem. Co. of Am.</u>, No. 12-01702, 2013 WL 3467328, at *8 (S.D. Ind. July 9, 2013) ("This court therefore finds that misjoinder is a question for the state court, applying its own procedural rules and its own discretion."); <u>Interior Cleaning Sys., LLC v. Crum</u>, No. 14-0199, 2014 WL 3428932, at *5 n. 10 (S.D. Ala. July 14, 2014) ("The Court cannot (and, even if it had discretion to do so, would not) retroactively manufacture federal subject matter jurisdiction in this case by slicing off the non-diverse portions of the case, returning those to state court, and keeping the rest."); <u>Vogel v. Merck & Co.</u>, 476 F. Supp. 2d 996, 1002 (S.D. Ill. 2007) (collecting cases).

The rationale against applying the fraudulent misjoinder doctrine in federal cases is well articulated and persuasive.  <u>See</u> <u>Rutherford v. Merck & Co., Inc.</u>, 428 F. Supp. 2d 842 (S.D. Ill. 2006); <u>Osborn v. Metro. Life Ins. Co.</u>, 341 F. Supp. 2d 1123 (E.D. Cal. 2004).  First, as the court in <u>Rutherford</u> explained, the fraudulent misjoinder doctrine amounts to an improper expansion of the scope of federal jurisdiction by federal courts.  <u>Rutherford</u>, 428 F. Supp. 2d at 851-52.  Indeed, nothing in the jurisprudence of the Supreme Court suggests that matters of state civil procedure, including joinder of claims, are questions that implicate the subject matter jurisdiction of a federal court.  <u>Id.</u>; <u>Shamrock Oil & Gas Corp. v. Sheets</u>, 313 U.S. 100, 104 (1941); <u>Chicago, R.I. & P.R. Co. v. Stude</u>, 346 U.S. 574, 580 (1954) ("[State] procedural provisions cannot control the privilege [of] removal granted by the federal statute.").  In that regard, federal courts traditionally have held that matters of state civil procedure have no bearing on the existence or nonexistence of federal subject matter jurisdiction.  <u>Id.</u>  It then logically follows that federal courts should hesitate to exercise jurisdiction to determine whether claims are misjoined pursuant to state procedural rules.

Second, the Court's review of the case law regarding the fraudulent misjoinder doctrine that has emerged since Tapscott reveals enormous judicial confusion and inconsistencies engendered by the doctrine.  See Rutherford, 428 F. Supp. 2d at 851.  More specifically, courts differ on the question of what facts constitute egregious misjoinder under the doctrine.  See, e.g., Walton v. Tower Loan of Miss., 338 F. Supp. 2d 691, 695 (N.D. Miss. 2004) ("[T]he governing legal standards regarding the fraudulent misjoinder doctrine are far from clear."); Bright v. No Cuts Inc., No. 03-640, 2003 WL 22434232, at *16 n.21 (E.D. La. Oct. 27, 2003) ("While the Tapscott court was clear that 'mere misjoinder' is not equivalent to fraudulent misjoinder, this aspect of the Tapscott holding has engendered confusion among courts and commentators alike."); Turnage v. Ford Motor Co. (In re Bridgestone/Firestone, Inc., Tires Prods. Liab. Litig.), 260 F. Supp. 2d 722, 728 (S.D. Ind 2003) ("[U]nder Tapscott, something more than 'mere misjoinder' of parties may be required to find fraudulent misjoinder. Precisely what the 'something more' is was not clearly established in Tapscott and has not been established since."). On that question, predictably, courts which have chosen to follow Tapscott have not been able to craft a bright-line rule which distinguishes "egregious" misjoinders from "mere" misjoinders. Bird v. Carteret Mortg. Corp., No. 06-588, 2007 WL 43551, at *12 (S.D. Ohio Mar. 22, 2007).  Such an unclear standard militates against the adoption of the doctrine.

Indeed, because of these types of consideration, the federal district courts in California have explicitly rejected the fraudulent misjoinder doctrine. See Osborn, 341 F. Supp. 2d at 1127; Aaron v. Merck & Co., Inc., No. 05-4073, 2005 WL 5792361, at *9 (C.D. Cal. Jul. 26, 2005); HVAC Sales, Inc., v. Zurich American Ins. Group, No. 04-03615, 2005 WL 2216950, at *20 (N.D. Cal. Jul. 25, 2005).  I note that the analysis contained in Osborn, which I also find persuasive, serves as the foundation for many of the subsequent cases declining to follow Tapscott. See, e.g.,

26

HVAC Sales, Inc., 2005 WL 2216950, at *16-17.  While these California decisions are not binding on this Court, they are nonetheless helpful because the instant member cases are transferred from California.

In my view, there are considerable reasons against adopting the fraudulent misjoinder doctrine.  Conducting fraudulent misjoinder analysis in this case necessarily requires the Court to wade into a thorny thicket of unsettled law; indeed, disagreements exist as to numerous questions about the doctrine, and "the last thing the federal courts need is more procedural complexity." Osborn, 341 F. Supp. 2d at 1127.  In fact, these unresolved issues have raised significant doubt in the context of remand.  Absent a Third Circuit directive, this Court declines to adopt the fraudulent misjoinder doctrine.  As a matter of policy, this approach is prudent in light of the Third Circuit's well-settled principle that the removal statutes should be strictly construed, and all doubts regarding the propriety of removal are to be resolved in favor of remand. See Abels v. State Farm Fire & Cas. Co., 770 F.2d 26, 29 (3d. Cir. 1985).  Moreover, "creating a new doctrine having the effect of expanding the removability of state court cases that, on their face, do not fall within the limited jurisdiction of the federal courts is neither wise nor warranted." Bird, 2007 WL 43551, at *12. Indeed, doing so would contravene the circuit court's instruction to narrowly construe the removal statutes.

As a final note, my decision against adopting the fraudulent misjoinder doctrine is based on a careful consideration of the removal statutes and the accompanying case law on this issue.  Such a result, in my view, comports with the traditional notion of the limited nature of federal jurisdiction.  In that regard, the arguments pertaining to misjoinder of claims should be presented to the state court for its adjudication.  With that said, however, the Removal Defendants' position as to the manner in which Plaintiffs here have pled their Complaints, including the joining of

numerous potentially non-related claims, raises substantial concerns.   Indeed, the instant Complaints join various claims of Plaintiffs from different states who likely have no connection to each other but for their ingestion of Plavix.   In fact, the Complaints are unclear as to facts surrounding Plaintiffs' injuries: whether these Plaintiffs received Plavix from the same prescribing physician, suffered the same type of injuries, ingested Plavix for the same reasons, used Plavix for similar lengths of time, or took similar dosages of Plavix.   While I am aware that California's joinder rules are particularly liberal, these factual matters will nevertheless necessarily have an impact on the outcome of the dispute over joinder of claims by Plaintiffs.   In my view, in pharmaceutical cases like the ones here, courts should be steadfast in guarding against plaintiffs' attempts at forum shopping by employing questionable procedural mechanisms, including misjoinder of claims.   The question of misjoinder remains in these cases, but will be left to the sound judgment of the state court.   Accordingly, Plaintiffs' request to remand member cases that have at least one non-diverse plaintiff from New York, New Jersey or Delaware, is granted.

## CONCLUSION

For the foregoing reasons, the Court **GRANTS** in part and **DENIES** in part Plaintiffs'

motion for remand.  In that regard, Plaintiffs' request to remand <u>Bozzell</u>, <u>Diercks</u> and <u>Ester</u> is

**DENIED**.  The Court lacks subject matter jurisdiction over the remainder of the cases because

there is no complete diversity. They will be transferred to the Northern District of California for

the purposes of remand to the California Superior Court located in San Francisco, California.  An

order will be entered consistent with this Opinion.


Dated: October 1, 2014                                         /s/    Freda L. Wolfson_____
                                                               Freda L. Wolfson, U.S.D.J.